calendar this afternoon and two cases that are being submitted on the on the briefs. Just for the record I will note the two submitted cases. The first one is number 05-3350 Posey versus the Department of Defense and the second submitted case is number 05-3358 Miller versus the Office of Personnel Management. The first of two companion cases for oral argument this morning, this afternoon, excuse me, is number 05-1269 Kinzenbaugh versus case LLC. Chessa, just want to confirm you you're reserving five minutes for your rebuttal, is that correct? That's correct. Okay, you can approach and begin whenever you're ready. You understand how the lighting system works? Yes, I do, Your Honor. Okay, well fire away whenever you're ready. May it please the appeal an erroneous interpretation of one claim element when it has not moved for JMOL on another claim element. If case is right that Kinsey's appeal in this case is unfounded then Kinsey would not have any remedy to correct an error of claim interpretation, a legal error, in the district court. Kinsey did not already ruled against Kinsey on the legal issues of claim interpretation and because under those the district court's claim interpretation on the legal issues the issue of infringement was a question of fact for the jury. Could I understand the claim construction issues that are here to help me? As I understand in claims 1 and 22 we have an issue about draft tongue means and powered lip linkage means, right? Yes. And with respect to both of those, the sole issue is whether connecting or connected, whatever the language was, is a description of function within 112 sect, right? Not quite, Your Honor. That is one issue, whether connecting is a description of function. That is functional on a means plus function clause. And then the other is whether the district court included too much structure in the means plus function clauses, structure that was not necessary to perform the functions which were described in the claims. Even as to those two, because I understood that the third, that the third one, the power swing, there was an issue as to whether there was too much structure included. No, our position with respect to the draft tongue means and the matter whether connecting is a function, no matter whether that's true or not, the district court still included too much structure. As to all three of them? Yes. Well, I'm not sure that I understand this to the first two. Assuming that connecting or connected, whatever the language is, is functional. What is, there's still an argument that there was too much structure? Yes, Your Honor. The connection function, if that is a function, is performed just by the draft tongue means. It does not have to be bifurcated at the end. The patent makes clear that the bifurcation or the opening at the end was to allow a front row unit to drop through that opening. Case does not have front row units. It does not perform that function. That function is not described in the claim. In fact, the claim doesn't even describe front row units. So the simple act of any kind of draft tongue, whether or not it's bifurcated, and in fact the summary of the invention says that the carrier frame is attached to the tractor by a draft tongue hitch or draft hitch tongue without saying that it's bifurcated. Bifurcation has no purpose in the connection function. The only purpose of the bifurcation or hole was to allow the front row unit on the center line to drop down through the tongue. Okay, and what's the issue about too much structure in relation to the second one, the power of lift linkage means? And that means plus function clause, Your Honor, the judge included a substantial number of elements on the lift frame and on the bell housing. On the lift frame, she Well, if you lose on the connecting issue, is there still an issue about too much structure under that limitation? Yes, Your Honor. The evidence at the trial was that from our witnesses was that the lift linkage is a simple four bar linkage, and that's the way the summary of the invention describes it. It's a four bar linkage in a hydraulic cylinder. The lift frame is one solid single well unit. Both cases, witnesses and Kinsey's witnesses testified to that. You can attach the parallel links at any point on that lift frame and still cause the lifting function, and you would have it connected because it would be connected to some part on the lift frame. You don't need the center struts 109 and horizontal mounting section 111 and the arched rear mounting bar that the in order to perform the connection function, you just need to attach the parallel links to some point on the lift frame. Since it's all one welded unit, it would still get lifted, and it would still be connected. It seems to me, I'm sorry, it seems to me, Jerome, the problem that I'm struggling with here in the way of conceptualizing what the function and necessary relationship is between function and necessary structure, specifically with reference to the term necessary. The way you've conceptualized necessity here seems to be that if you could substitute a different structure for the particular structure that's used in the patented, in the patent specification in the embodiments, then the particular structure that's used in the embodiment isn't necessary. But I wonder if that's the right way to look at the relationship between function and structure. Let me give you an example that may illustrate what's bothering me. You could say, suppose you have a vehicle and you're describing a motor and wheels and then means for transmitting the rotational energy to the wheels from the motor. Now in the particular patented device you have a crankshaft, a differential, and then an axle, and the energy is going through all those. Now you would say, I think, that the means for transmitting the energy would include the differential. That would be a natural way of characterizing the structure that was Oh, of course, you could have an engine that's sitting in the back between the two rear wheels, or you could have front wheel drive engine that didn't have a differential. So it's not strictly necessary to have a differential in order to communicate energy from the motor to the wheels, right? If I follow you, I think you're right. So the question is, when you say, is this necessary structure? It seems to me, don't you have to look at the particular embodiment that the patent is focused on and ask, in that context, is this structure necessary? I would say yes, but... You would pick up my differential and you would then, for that reason, have to say in the context of that patent, the differential is a necessary structure. I would have two answers to that. I would say yes, but you must look at the function and then consider what structure is necessary to go to my case. Would you say the differential is necessary to perform that function? The function being to transfer energy from the motor to the wheels? The function as described in that clause, yes, but with respect, for example, the rotation function, the power swing means, those additional lengths are specifically described as performing other functions, the deceleration function and the over-center locking function, not as part of the rotating function. And the summary of the invention broadly states that the rotation can be caused by a hydraulic cylinder. So there is other references, other descriptions to accomplishing those functions without using those additional lengths. But in that limitation, the parts that you say should be left out are connecting parts that are necessary for the other parts to perform that function, aren't they? If in that embodiment you didn't have those lengths, there wouldn't be a connection between the hydraulic cylinder and the cranker. Yeah, it couldn't perform a swing, right? I don't think the connecting function is described in the power swing means clause. No, no, no, I'm not talking about the connecting, but I'm really pursuing the same line of inquiry that Judge Bryson is pursuing in the power swing means example, which I understand your contention there about the two pieces of structure you say aren't necessary, but they are necessary to connect the two pieces of structure that you say are necessary. So those two pieces couldn't perform the function unless they were connected, right? In the embodiment illustrated in the drawing, that's true. There was testimony that the standard way of causing rotation is to use a hydraulic cylinder and a cranker, and this would be an ordinary mechanical device that's been known for a long time. The summary of the invention says that's how you can cause rotation just using a hydraulic cylinder. But that would be a different embodiment from the one shown in the pack. You could have had that embodiment in there, but as I understand it, this is the embodiment that's there. And just as, again to go back to my homely example, you don't need to have a differential. It's a perfectly well understood way to do, to transfer energy from an engine into wheels without a differential, but this particular structure of a front-end engine or rear-wheel drive has a differential, and therefore isn't that necessary. But if another part of the front-end that is also a structure that's described in the patent and would be able to be incorporated into the Means Plus Function Clause under Section 1. And is the figure 19, figure 20, is there an alternative embodiment in the patent? There's no other drawing of that, but the summary of the invention does describe all three of these devices in a broader fashion as far as the structure that's accomplished the functions. And where would I look to find the second, the alternative embodiment? In columns 2 and 3 under the summary of the invention, for the draft tongue, they say that the carrier frame is connected to the drafter through a draft tongue hitch without describing the draft tongue hitch as being bifurcated. I have a reference to that, Your Honor, in column 2. That would be in line 33, a telescoping hitch tongue. And then the four-bar linkage device is described more broadly in line 41 and 42, a heavy four-bar linkage actuated by a pair of master hydraulic cylinders. That doesn't describe all of the other structure that's included in the judge's interpretation, but it is an accurate description of a standard four-bar linkage, which witnesses on both sides testified as a very well-known mechanical device. I'm sorry, were you finished? I had a question. Are you answering Judge Bryce's question? One more Means Plus Function Clause, Your Honor, and as far as it's described in the summary of the invention, that's in column 3. The power swing means is described more broadly in column 3, line 43, just referring to a hydraulic cylinder. Now I'm ready for your question, Your Honor. No, no, that's fine. It's good you finished your response to that question. Going back, Mr. Chesnut, to the first limitation in Claim 1 that's at issue here, the draft tongue means connecting said carrier frame to the tractor hitch for permitting pivotal movement. Let's assume for the moment that one were to agree with your contention that the district court erred in saying that connecting was described a function for purposes of the Means Plus Function Claim. But what if you just looked at connecting as saying basically, if you read the claim as saying draft tongue means, which is connected to the carrier frame, which connects the carrier frame to the tractor for permitting pivotal movement, etc. In other words, the draft tongue frame, which is connected, for permitting movement. And you look at the draft tongue means as encompassing items 15, the clevis 16, and the bifurcated element 17. What would your response be to that? My response to that would be the function is permitting pivotal movement. And the structure for that function is the clevis 16, which allows the pivoting boulder pin to go through. And that would be then the corresponding structure of the Means Plus Function Clause. The connection, in your parenthetical phrase, would not be a function. It would just be physical connection, which would be any way of connecting. The district court judge, and correct me if I'm wrong, please, I think found that for the performing the pivoting function, I think he, am I correct in thinking that he found that the structure there was 15 and 16? He didn't include 17 in that? I don't think we can read it that way, Your Honor. I think she did. No, I'm, that's what I'm saying. She said that the function is both connecting and permitting pivotal movement and the structure for performing those functions. She didn't break it down. I see, she didn't say, okay. No, and I think she did the same with the linkage means. I tell you, Mr. Chess, you're all finished, both your main argument and your rebuttal time, but you received a number of questions, so we'll restore your five minutes for your rebuttal. Thank you. And Mr. Boland, we'll give you an additional five minutes on your main argument if you need it. So, Mr. Smith, if you could just give Mr. Boland five. Thank you. Thank you. Good afternoon. May it please the court. So, let me, I don't mean to pounce on you before you say anything, but time flies quickly as we know, so I apologize. But getting to what I was finishing up discussing with Mr. Chesnut, what is your answer if one concludes that the district court judge did err in finding that connecting represented a function for purposes of a 112-6 claim? Where does that leave us in your view? I know you disagree with that, but assume that for the moment. Where would we be? My reading of her Markman ruling is that she found that it's just 15 and 16 in that situation, Your Honor. Okay. So, is that a problem for you then? Well, it's several points in response to that, if I may. Well, your key point is that you don't have this bifurcated piece, item 17. Sure. And I think a fair reading of the patent is that the item 15, as it's defined in the specification, includes the bifurcated section 17. Whenever 15 is referred to, it's an arrow to the entire pitch, the entire tongue. And the only specific tongue that's referenced in the patent actually goes from the clevis all the way back to the mainframe, and it includes the telescoping section, and it includes the bifurcated rear floor. Now, when we're talking about—I want to make sure I understand this, because I think on this first reading of the case, I got a little bit off base. When you're talking about this function here, performing pivotal movement, we're talking about the movement that takes place, am I correct, when the tractor makes a turn in the field. That's correct. Okay. It's the entire unit, the framing unit, including the tongue that's described in the patent. There's no movement between the tongue itself and the mainframe. The movement pivots up at the tractor hitch. So it's your position—is it your position that for purposes of performing the function of pivoting, that 15, 16, and 17 are all necessary? Yes, because, Your Honor, our position is that's the only structure that's disclosed. Why is 17 necessary? Because it's defined as part of 15. And as Judge Bryson alluded to before, I don't think the standard to look at is what could the specification have said. It's what does the specification say. Here there's one specific embodiment described. And this entire issue that Mr. Chestnut has raised could have been solved very easily if the drafter of that specification had been more clear and said, Look, here's how we prefer to do it. However, public, please take notice that in alternative forms of our invention, this bifurcated section is not needed. And I think when you look at the patent itself and the intrinsic evidence as a whole—and if I could make one note on this specific point that wasn't in our brief, so I'm just giving a warning, but it's in the prosecution history—there's an argument that was made. It's in Amendment B, the Second Amendment, and it's at Appendix Pages 3874 and 3875. And in that particular location, the patentee argued that the claimed invention, quote, unquote, achieves a result that is not achieved by the Carter patent that had been cited against them. They go on to explain what that result is. They say that our invention allows two sets of row units to be used, front and back, and therefore we can drop a unit right down in the center. They're talking about right through that bifurcated section of the tongue. Now, that argument could not have been made if the entire tongue structure was not incorporated in the claims as they existed at that time, and they clearly included this draft tongue means. So it's not just the specification. It's the intrinsic record as a whole that supports the interpretation that Judge Reed gave to that claim. Unless there's other issues on the tongue, I'd be happy to move on. a shorthand description of embodiments from which he argues that we can find that some of the features that are in the more elaborately described embodiment are not necessary, even within the context of this design. And your response? Several points again. One is I don't recall those points being made in the brief because I don't recall our having to address them in our response brief. Second is my reading of the summary is not quite the same as Mr. Chessman's. My reading of the summary is that the same machine is described. It's described in more general fashion, but it's the same machine. And the language that links the summary into the detailed description of the invention, I don't think says anywhere that there's alternative embodiments that are described in the summary that are beyond the purview of the very specific machine that's described throughout the patent. We don't see that the hitch that's mentioned in Column 2 where Mr. Chessman just pointed is some other type of hitch. There's only one described in the patent from a structural standpoint. And certainly in accordance with the public policy behind Section 112, Paragraph 6, what that is is a shortcut.  I can describe my invention using the means language, and if I do, here's the rules that have to be followed. Or I can describe it more broadly and use simply a tongue member. They could have said a tongue member, and we wouldn't be here arguing this today. But they chose to use the language draft tongue means. They don't dispute that it's 112.6. And when that happens, very specific rules kick in. Let's all take a look at the function. Let's define what it is. Let's look at the specification and see the specific structure disclosed. And again, this goes to the public notice function. The purpose of the specification, let's strike that. The purpose of the claims, when construed in light of the specification in prosecution history, is to give the public notice of what's covered and what's not. And when the drafter chooses the means language and chooses not to describe the structure in the claim, it's only fair to allow the public to assume that the structure is actually disclosed. Not general descriptions of things and not showing how they're connected like it is in the summary. That doesn't suffice. What suffices are particular embodiments. That's what this court has historically looked to in assessing the scope of means plus function structures. So I hope I've answered your question, Judge Breis. I can briefly comment on the other 1, 12, 6 issues. What about the connecting issue? They're saying basically that connecting is not a description of function because it doesn't, I think, come after for. It doesn't say for connecting. It means for connecting. What's the response to that? Sure. In the context of the draft tongue means and the power to lift linkage means, connecting clearly is describing a function because it's saying here's what the means does. Here's what it does. Mr. Chestnut has pointed to Claim 3 where the words connected between occur, and there's a clear difference there. Claim 3 is describing the location of the power means followed by the function. So we think that the plain language itself sets forth that connecting is a function because there's no structural members getting from the hitch back to the mainframe for the tongue means, and without that connecting language, again, you'd be missing linkages going from the carrier frame back to the lift frame for the power to lift linkage means so that the express language connecting describes what the means does. What is its purpose? What is its function? Excuse me. Secondly, Mr. Chestnut hasn't cited a single case which stands for the proposition that where the word for is lacking in the claim language, that word that ends in ing, such as connecting here, should be construed as a function. But you haven't cited a case the other way, have you? Your Honor, we have the Northrop Grumman case and the Ferguson Bogart case. They didn't deal with the word connecting, but it said means generating in one instance. Yeah, but those weren't cases in which you had connecting for doing something, and the word connecting was before the for. But what I'm saying is in the one case it was either Northrop or the other one. It's means generating. Yeah, but it doesn't present the precise issue here. I understand that you don't need the word for in the means plus function claim, but where you have that construct, the argument is that the function is the language appearing after the word for rather than the language appearing before it. And we haven't had a case involving that before, have we? Not on the precise connecting issue, but I think again— No, I don't mean that. But I mean in terms of the use of the word for in the means plus function claim with some description of the function coming before the word for and some coming afterwards. I see your point, and I can't say on that precise point I'm aware of authority which has made it a requirement or not a requirement. Assume for the moment that we read the word connecting as if it said draft tongue means connected to said carrier frame and the tractor hitch. Okay. Now, how would you construe that clause? Connected to the carrier frame and the hitch. Right. Again, I could construe that in context. I think the answer is plainly look at it in context. Look at that precise language. Look at the means language which presumptively triggers the 112.6 application and make a determination. Is that part of the claim function? Well, I guess what I'm asking you for is to parse that clause for me in a way that you think would be consistent with your theory of the case because I think it is not unfair, frankly, to read that language the way I've just translated it. The problem here, obviously, is this claim is— the most flattering thing you could say about it is it's a hybrid. It's not a pure means plus function claim. It's got some structure and some means plus function. You could also call it a mess, but it's difficult to parse. Excuse me. If we say connecting something to something else is really a reference to more a description of structure than it is to a description of function and therefore connected would be the word that would go in there, how would you parse the clause? Again, I think you've hit the nail right on the head. Is it a description of structure or is it describing what the means that state it does? Well, of course, we face this problem all the time because there are lots of words that describe structure. A screwdriver describes structure, but it also describes exactly what it does. Again, I'm going to take connected to in that context, Your Honor, and say that that should be construed as what the tongue does. What is its purpose? When you're looking at the function, the questions which are triggered are what's the purpose of this means? What does it do? Versus, on the other hand, where is it or what is it structurally? Those are the cases where the presumption can be overcome, where, for example, there's many cases which this Court holds where there's plenty of structure which follows application of the word means and therefore we're not even going to apply the statute at all. Here, connected to, I can see how somebody might argue it both ways, but without any recitation of structure which follows it, which is the case here, my view is that 112.6 should apply. That should be part of the function because it's clearly stating what the means does in the context of that claim application. If I could just briefly comment on the power swing means which came up in Mr. Chestnut's argument. Again, the issue is not what could have been described in terms of the structure. This is a case where there's no disagreement on the function. There's, from the hydraulic cylinder, one, two additional links to the part that's actually rotated. I think the precedent is very clear that if the only structure described is these links 218 and 221, which are there, and the specification does not describe a specific alternative embodiment, that the question has already been answered. Those are the actual structures disclosed. That's what the Court correctly found. There is still an issue, and it was an issue in this case. There is an embodiment which lacks those elements equivalent. The claim still covers the actually disclosed structure and its equivalents, but that's not the issue for construing what structure goes into the claim. If I could go to one or two other points. I have about five or six minutes left. For the reasons we set forth in our brief, we don't think that we should be here today. Even if Mr. Chestnut is right on all of his points, we respectfully submit that the judgment of non-infringement, actually the verdict, should be affirmed. This is not a forum where any error that was made below provides an opportunity to come in and argue for yourself. I'll be candid with you. I thought that argument that you're making is completely without support. Can you point me to any case that suggested that where you have a general verdict? The Cuito case, Your Honor. It's one that we cited. There was a general verdict which we put in our appendix. It said A5116. The verdict said, is the patent infringed, yes or no? It was a case where there were at least four claim limitations that were disputed below. Turnkey, on appeal, contested the claim construction on two, the predetermined means and the flow record, and the evidence on others. And this court took a look at the facts and said, we can dispose of this based on one claim limitation, the predetermined means. They looked and said, the claim construction issue, we're not going to treat any differently than below. There actually had been a waiver, and there was sufficient evidence. So in that case, picking one disputed claim element, the court affirmed the general verdict. But your problem is that the Supreme Court and the Eighth Circuit have repeatedly said that where you have a general verdict, not talking about sufficiency of the evidence, but talking about errors in the instructions, that if there's an error in the instruction, the general verdict has to go as to one theory of recovery or one defense. I don't understand in the Abbott case, which you rely on so heavily, it's not a case involving a general verdict. It was a special verdict in which the jury had found several claim limitations missing. That's not the situation here. I mean, how do you deal with Sunkist and these other Supreme Court cases? I think that there is a major distinction between a verdict that relies on separate legal theories of recovery or a number of separate defenses, which is the line of cases cited by Mr. Chestnut in his reply, versus a situation where there's a single defense or a single legal theory that's supported by multiple grounds. For example, in the North Point case, there was an issue of anticipation, and this court held very clearly that anticipation is a single theory of defense. Even though there were five references asserted to anticipate and error was being argued with respect to at least one or two or three— But that was a—I'm completely—I have to say I'm completely in agreement with Judge Dyke in his take on this, and I was surprised to see this argument in your brief. This exact panel sat on North Point, and the point, I thought, of that case was that there's a distinction between legal errors and factual insufficiency. And the point at North Point was to say factual insufficiency is something as to which you can't simply win on one of multiple theories and then say, that theory is to be the factual theory for finding liability, and inasmuch as the evidence is insufficient on that theory, I get a reversal. No, that's what the Supreme Court said in Griffin. But it said exactly the opposite with respect to legal errors, and what we're dealing with here is a legal error. This case is, it seems to me, no different in its posture than if the trial judge had construed the claim here to require that the implement be colored green, and that the jury had come in with a general verdict of non-infringement. I don't think you'd be arguing that who cares about the green business, because they have to prove that every single claim limitation was unsupportable. I don't think you'd be making that argument, because it seems so clearly possible that the jury might have been misled by the legal error. In this case, I asked the court to take note of the fact that we attempted to, again, avoid this problem by proposing a special verdict which outlined the precise claim elements in dispute, all five of them, for each independent claim, and asked the jury to indicate yes or no. And life would have been a lot easier for us, at least, and perhaps for you, if the special verdict had been adopted. But I know of no case, maybe you can point us to one, but I know of no case in which we've held that the failure to agree to, and by the district court, the failure to adopt a special verdict as opposed to a general verdict, requires a different approach to the question of legal error. Well, I can say this, that on the Federal Circuit authority that I'm aware of in the infringement context, where there's been legal error shown, the cases that the appellants rely on, Ecolab and Wenger, for example, involved a single claim limitation which was in dispute. A single one, and obviously there, if the error was shown to be prejudicial, the patentee should be entitled to a new trial on that ground. But here, let's say there was ten limitations at issue, and parties go and spend weeks and weeks and weeks trying a complex case, spending all this money, and under the appellant's theory, that one claim construction, one limitation is shown to have a claim construction error. Under the appellant's theory, this court would have to vacate that verdict and send it all back to be redone. Well, it may not make any sense, but it's the law, and the Supreme Court has said that. It was the explicit holding, as I read it, of Sunkist, for example, in their earlier cases. Isn't that what Sunkist said? I'm not specifically familiar with the facts as I stand here today to Sunkist, Your Honor, so I can't comment, but I'd be happy to check it, as you know, somehow, if you desire. Well, I don't think that's necessary. I see that the red light's on, but I'm happy to answer any further questions. I think all of the questions that we have have been posed, Mr. Boland. Thank you. Thank you. Tessa, you have your five minutes for rebuttal. I'll try to take up the points Mr. Boland made in the order that he made them. He first referred to an argument that was in his brief relative to the argument made in the prosecution history, trying to distinguish the Carter reference by saying Carter doesn't allow you to have front row units. The context of that argument was the invention permits this and not the invention requires it. The claims don't require front row units, and even if it did, it wouldn't require a barricaded hitch because the front row units wouldn't have to be on the center line. It could be off the center line just the way the back row units are not on the center line. With respect to the Corito case, I think the court is well aware of the Corito case, and there was no error of claim interpretation, no case cited by case involved an error of erroneous jury instruction. And that totally distinguishes the case that we have here from the cases that the case relied on. As far as the verdict form, the judge selected her own verdict form. Both sides proposed a verdict form. The judge obviously wanted a very simplified form, which is her right. But you opposed a special verdict, right? No. What happened was, Your Honor, when the time came to put the proposed pretrial order together, the case had a proposed verdict, and we said that's pretty complicated. We don't like that. Here's ours. We both attached our proposed verdict forms to the pretrial order. We never heard anything more about the verdict form until the judge came up with her own verdict form and presented it to us. She came up with her own verdict form. She obviously wanted a very simple form, and even the simplified form that she came up with obviously confused the jury because they didn't answer question number two. So I think she had justification for trying to simplify it as much as possible. The Ecolab case, I think, is directly inclined. Mr. Golan said there was only one claim limitation. There were actually two claim limitations that this court reviewed. One was the reflecting surface, and the other one was reflected light. The court held that in Claim 16, the district court got one of those limitations right, but the other limitation was wrong, and they reversed their verdict of no infringement on Claim 16. Neither one of us has to— Suppose on the connecting point, we struggle with this, and we struggle with this, and we can't come up with an answer that's sort of an equal point. Doesn't the patentee under those circumstances lose? You mean if you— As to whether connecting is a description of function or a description of structure. No. Even if your honors decide that connecting is a functional description under the means-plus-function analysis, there is no necessity to include the bifurcated portion. No, I understand that. My question wasn't clear. I'm saying you lose on the connecting issue being functional. We can't figure out which it should be if we're stuck. Doesn't the patentee lose? No, because even if you can't figure out, in other words, if you accept the district court's interpretation that connecting is functional language— No, no. I'm saying we can't tell whether it's functional or structural. Well, then I think then it's not a means-plus-function clause, because if you cannot say that this is a function— Never mind. We were looking for some help here. I know you don't want to give any ground, and that's understandable, but I do think that the principle of athletic alternatives is the general principle that where the courts in equipoise on a claim construction issue, they lay it off on the patentee because the patentee was the party that was in a position— I understand. I read the draft of the argument. But I think— A kind of a contra preferentum rule is applied to patent drafting. But as I understand the analysis under Section 112, Paragraph 6, you first determine whether it's functional. And if it's not functional, then it's not a means-plus-function. So if your honors decide that connecting—you can't make up your minds, I would say, then the decision has to be it's not functional language. Thank you. Mr. Chessnut, thank you. The case is submitted, although I guess you can stay up here. Mr. Feldman, I'm sorry. Well, that concludes the oral argument in Number 05.